## The UNITED STATES v. SMITH.

The act of the 3d of March, 1819, c. 76. s. 5. referring to the law of
nations for a definition of the crime of piracy, is a constitutional ex-
ercise of the power of Congress to define and punish that crime.
The crime of piracy is defined by the law of nations with reasonable
certainty.
Robbery, or forcible depredation, upon the sea, *animo furandi*, is pira-
cy by the law of nations, and by the act of Congress.

THIS was an indictment for piracy against the
prisoner Thomas Smith, before the Circuit Court of

Virginia, on the act of Congress, of the 3d of March, 1819, c. 76.[a]

The jury found a special verdict as follows : " We, of the jury, find, that the prisoner, Thomas Smith, in the month of March, 1819, and others, were part of the crew of a private armed vessel, called the Creollo, (commissioned by the government of Buenos Ayres, a colony then at war with Spain,) and lying in the port of Margaritta ; that in the month of March, 1819, the said prisoner and others of the crew mutinied, confined their officer, left the vessel, and in the said port of Margaritta, seized by violence a vessel called the Irresistible, a private armed vessel, lying in that port, commissioned by the government of Artigas, who was also at war with Spain ; that the said prisoner and others, having so possessed themselves of the said vessel, the Irresistible, appointed their officers, proceeded to sea on a cruize, without any documents or commission whatever ; and while on that cruize, in the month of April, 1819, on the high seas, committed the offence charged in the indictment, by the plunder and robbery of the Spanish vessel therein mentioned. If the plunder and robbery aforesaid be piracy under the act of the Congress of the United States, entitled, ' An act to protect the commerce of the

_a_ Which provides, (_s._ 5.) " That if any person or persons whatsoever, shall, on the high seas, commit the crime of piracy, _as defined by the law of nations_, and such offender or offenders shall afterwards be brought into, or found in, the United States, every such offender or offenders shall, upon conviction thereof, before the Circuit Court of the United States for the District into which he or they may be brought, or in which he or they shall be found, be punished with death."

United States, and punish the crime of piracy,' then we find the said prisoner guilty ; if the plunder and robbery, above stated, be not piracy under the said act of Congress, then we find him, not guilty."

The Circuit Court divided on the question, whether this be piracy as defined by the law of nations, so as to be punishable under the act of Congress, of the 3d of March, 1819, and thereupon the question was certified to this Court for its decision.

The *Attorney General*, for the United States, contended, that Congress, by referring to the law of nations for a definition of the crime of piracy, had duly exercised the power given them by the constitution, " to define and punish piracies and felonies committed on the high seas, and offences against the law of nations." By this reference they adopt the definition of the offence given by the writers on public law. All these writers concur in defining it to be, depredation on the seas, without the authority of a commission, or beyond its authority.* If there be any defect of precision or slight uncertainty in the definitions of the crime of piracy given by different writers on the law of nations, it is no more than what is to be found in common law writers on the crime of murder. Yet we are constantly referred

---

a *Grotius de J. B. ac. P. l.* 2. c. 15. s. 5. *Puffendorf, l.* 2. c. 2. s. 10. *Vattel, Droit des Gens, l.* 3. c. 15. s. 226. *Bynk. Q. J. Pub. l.* 1: *Duponceau's Trans. p.* 127. *Marten's Hist. of Privateers, p.* 2. *Horne's Transl. Molloy, b.* 1. c. 4. s. 5. 2. *Bro. Civ. and Adm. Law,* 461. 2 *Azuni,* 351. *Johns. Transl.* and the authorities there cited.

by the legislature to the common law for the definition of murder and other felonies which are mentioned in statutory provisions. But there is no defect in the definition of piracy by the authorities to which we are referred by this act. The definition given by them is certain, consistent, and unanimous; and pirates being *hostes humani generis*, are punishable in the tribunals of all nations. All nations are engaged in a league against them for the mutual defence and safety of all. This renders it the more fit and proper that there should be a uniform rule as to the definition of the crime, which can only be drawn from the law of nations, as the only code universally known and recognized by the people of all countries.

Mr. *Webster*, contra, argued, that the special verdict did not contain sufficient facts to enable the Court to pronounce the prisoner guilty of the offence charged. The facts found, do not necessarily infer his guilt, but, on the contrary, are consistent with his innocence; inasmuch as it appears that he was one of the crew of a vessel belonging to Buenos Ayres, although not acting at the time when the supposed offence was committed under the commission of that colony, but acting as a non-commissioned captor, and as such, seizing the property of Spanish subjects on the high seas. But even supposing the offence to be well found by the special verdict, it cannot be punished under this act, because the law is not a constitutional exercise of the power of Congress to define the crime of piracy. Congress is bound to define it

in terms, and is not at liberty to leave it to be ascertained by judicial interpretation. To refer to the law of nations for a definition of the crime, is not a definition; for the very thing to be ascertained by the definition, is the law of nations on the subject. The constitution evidently presupposes that this crime, and other offences committed on the high seas, were not defined with sufficient precision by the law of nations, or any other law, to form a rule of conduct; or it would merely have given Congress the power of punishing these offences, without also imposing upon it the duty of defining them. The writers on public law do not define the crime of piracy with precision and certainty. It was this very defect which rendered it necessary that Congress should define, in terms, before it proceeded to exercise the power of punishing the offence. Congress must define it as the constitution has defined treason, not by referring to the law of nations in one case, or to the common law in the other, but by giving a distinct, intelligible explanation of the nature of the offence in the act itself.

Mr. Justice STORY delivered the opinion of the court. The act of Congress upon which this indictment is founded provides, "that if any person or persons whatsoever, shall, upon the high seas, commit the crime of piracy, as defined by the law of nations, and such offender or offenders shall be brought into, or found in the United States, every such offender or offenders shall, upon conviction thereof, &c. be punished with death."

*1820.*

U. States
v.
Smith.

*Feb. 25th.*

The first point made at the bar is, whether this enactment be a constitutional exercise of the authority delegated to Congress upon the subject of piracies. The constitution declares, that Congress shall have power "to define and punish piracies and felonies committed on the high seas, and offences against the law of nations." The argument which has been urged in behalf of the prisoner is, that Congress is bound to define, in terms, the offence of piracy, and is not at liberty to leave it to be ascertained by judicial interpretation. If the argument be well founded, it seems admitted by the counsel that it equally applies to the 8th section of the act of Congress of 1790, ch. 9. which declares, that robbery and murder committed on the high seas shall be deemed piracy; and yet, notwithstanding a series of contested adjudications on this section, no doubt has hitherto been breathed of its conformity to the constitution.

In our judgment, the construction contended for proceeds upon too narrow a view of the language of the constitution. The power given to Congress is not merely "to define and punish piracies;" if it were, the words "to define," would seem almost superfluous, since the power to punish piracies would be held to include the power of ascertaining and fixing the definition of the crime. And it has been very justly observed, in a celebrated commentary, that the definition of piracies might have been left without inconvenience to the law of nations, though a legislative definition of them is to be found in most muni-

cipal codes.[a] But the power is also given "to define and punish felonies on the high seas, and offences against the law of nations." The term "felonies," has been supposed in the same work, not to have a very exact and determinate meaning in relation to offences at the common law committed within the body of a county. However this may be, in relation to offences on the high seas, it is necessarily somewhat indeterminate, since the term is not used in the criminal jurisprudence of the admiralty in the technical sense of the common law.[b] Offences, too, against the law of nations, cannot, with any accuracy, be said to be completely ascertained and defined in any public code recognised by the common consent of nations. In respect, therefore, as well to felonies on the high seas as to offences against the law of nations, there is a peculiar fitness in giving the power to define as well as to punish; and there is not the slightest reason to doubt that this consideration had very great weight in producing the phraseology in question.

But supposing Congress were bound in all the cases included in the clause under consideration to define the offence, still there is nothing which restricts it to a mere logical enumeration in detail of all the facts constituting the offence. Congress may as well define by using a term of a known and determinate meaning, as by an express enumeration of all the particulars included in that term. That is cer-

1820.

U. States
v.
Smith.

The crime of piracy is constitutionally defined by Congress, in an act referring to the law of nations for a definition of that crime.

a *The Federalist, No.* 42. *p.* 276.
b See 3 *Inst.* 11ᵛ. *Hawk. P. C. ch.* 37. *Moore,* 576.

tain which is by necessary reference made certain. When the act of 1790 declares, that any person who shall commit the crime of robbery, or murder, on the high seas, shall be deemed a pirate, the crime is not less clearly ascertained than it would be by using the definitions of these terms as they are found in our treatises of the common law. In fact, by such a reference, the definitions are necessarily included, as much as if they stood in the text of the act. In respect to murder, where " malice aforethought" is of the essence of the offence, even if the common law definition were quoted in express terms, we should still be driven to deny that the definition was perfect, since the meaning of " malice aforethought" would remain to be gathered from the common law. There would then be no end to our difficulties, or our definitions, for each would involve some terms which might still require some new explanation. Such a construction of the constitution is, therefore, wholly inadmissible. To define piracies, in the sense of the constitution, is merely to enumerate the crimes which shall constitute piracy; and this may be done either by a reference to crimes having a technical name, and determinate extent, or by enumerating the acts in detail, upon which the punishment is inflicted.

Definition of piracy by the law of nations, and the act of Congress.

It is next to be considered, whether the crime of piracy is defined by the law of nations with reasonable certainty. What the law of nations on this subject is, may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by ju-

dicial decisions recognising and enforcing that law. There is scarcely a writer on the law of nations, who does not allude to piracy as a crime of a settled and determinate nature; and whatever may be the diversity of definitions, in other respects, all writers concur, in holding, that robbery, or forcible depredations upon the sea, *animo furandi*, is piracy. The same doctrine is held by all the great writers on maritime law, in terms that admit of no reasonable doubt.[a] The common law, too, recognises and punishes piracy as an offence, not against its own municipal code, but as an offence against the law of nations, (which is part of the common law,) as an offence against the universal law of society, a pirate being deemed an enemy of the human race. Indeed, until the statute of 28th of Henry VIII. ch. 15. piracy was punishable in England only in the admiralty as a civil law offence; and that statute, in changing the jurisdiction, has been universally admitted not to have changed the nature of the offence.[b] Sir Charles Hedges, in his charge at the Admiralty sessions, in the case of Rex v. Dawson, (5 *State Trials*,) declared in emphatic terms, that " piracy is

---

a Santerna, (*lib.* 4. *note* 50.) for instance, says, " Inter piratam et latronem, non sit alia differentia, nisi quia pirata depredator est in mari et potest dici fur et latro maris, quia latrocinium et furtum sicut fit in terra, sic fit in mari." And Emerigon, (1 *Emerig. Assur. ch.* 12. *s.* 29. *p.* 523.) " La piraterie est un brigandage sur mer. Le Brigandage, sur terre est appellé vol ou rapine." So Straccha " Piratae sunt latrones maritimi."

b *Hawk. P. C. ch.* 37. *s.* 2. 3 *Inst.* 112.

only a sea term for robbery, piracy being a robbery committed within the jurisdiction of the admiralty." Sir Leoline Jenkins, too, on a like occasion, declared that " a robbery, when committed upon the sea, is what we call piracy ;" and he cited the civil law writers, in proof.    And it is manifest from the language of Sir William Blackstone,[a] in his comments on piracy, that he considered the common law definition as distinguishable in no essential respect from that of the law of nations.    So that, whether we advert to writers on the common law, or the maritime law, or the law of nations, we shall find that they universally treat of piracy as an offence against the law of nations, and that its true definition by that law is robbery upon the sea.    And the general practice of all nations in punishing all persons, whether natives or foreigners, who have committed this offence against any persons whatsoever, with whom they are in amity, is a conclusive proof that the offence is supposed to depend, not upon the particular provisions of any municipal code, but upon the law of nations, both for its definition and punishment.  We have, therefore, no hesitation in declaring, that piracy, by the law of nations, is robbery upon the sea, and that it is sufficiently and constitutionally defined by the fifth section of the act of 1819.

The special verdict in this case contains sufficient facts upon which to pronounce the prisoner guilty of piracy.

Another point has been made in this case, which is, that the special verdict does not contain sufficient facts upon which the Court can pronounce that the

*a  4 Bl. Comm. 73.*

prisoner is guilty of piracy. We are of a different opinion. The special verdict finds that the prisoner is guilty of the plunder and robbery charged in the indictment; and finds certain additional facts from which it is most manifest that he and his associates were, at the time of committing the offence, freebooters upon the sea, not under the acknowledged authority, or deriving protection from the flag or commission of any government. If, under such circumstances, the offence be not piracy, it is difficult to conceive any which would more completely fit the definition.

It is to be certified to the Circuit Court, that upon the facts stated, the case is piracy, as defined by the law of nations, so as to be punishable under the act of Congress of the 3d of March, 1819.[a]

a To show that piracy is defined by the law of nations, the following citations are believed to be sufficient :

Grotius (lib. 3. c. 3. s. 1.) says, " Supra dicere incepimus jus-tum bellum apud probos auctores dici saepe, non ex causa unde oritur, neque ut alias ex rerum gestarum magnitudine, sed ob peculiares quosdam juris effectus. Quale autem sit hoc bellum optime intelligitur ex hostium definitione apud Romanos jurisconsultos : Hostes sunt, qui nobis, aut quibus nos publice bellum decernimus ; cœteri LATRONES aut PRÆDONES sunt, ait Pomponius (Dig. Lib. 50. tit. 16. l. 118.) nec aliter Ulpianus, (Dig. lib. 49. ti. 15. l. 24.) hostes sunt, quibus bellum publice populus Romanus decrevit, vel ipsi populo Romano ; cœteri LATRUNCULI vel PRÆDONES appellantur. Et ideo, qui à latronibus captus est servus latronum non est, nec postliminium illi, necessarium est. Ab hostibus autem captus ; puta à Germanis et Parthis et servus est hostium, et postliminio statum pristinum recuperat. Et Paulus, (Dig. lib. 49. tit. 15. l. 19. s. 2.) A piratis aut latronibus capti liberi permanent. Accedat illud Ulpiani ; in civilibus dissentionibus quamvis sœpe per eas respublica lœdatur, non ta-

Mr. Justice LIVINGSTON dissented. In a case affecting life, no apology can be necessary for expres-

*men in exitium reipublicæ contenditur ; qui in alterutras partes discedent, vice hostium non sunt eorum, inter quos jura captivitatum aut postliminiorum fuerint ; et ideo captos, et venundatos, posteaque manumissos placuit supervacuo repetere a principe ingenuitatem, quam nulla captivitate amiserant. (Dig. lib. 49. tit. 15. l. 321. s. 2.")*

Grotius adds, (s. 2.) " Illud tantum notandum, sub exemplo populi Romani quemvis intelligi, qui in civitate summum imperium habeat."

Again, he says, (s. 2.) " Non autem statim respublica aut civitas esse desinit, si quid admittat injustum, etiam communiter ; nec coetus PIRATARUM aut LATRONUM civitas est, etiamsi forte æqualitatem quandam inter se servent, sine qua nullus coetus posset consistere. Nam hi criminis causa sociantur ; illi etsi interdum delicto non vacant juris tamen fruendi causa sociati sunt, et exteris jus reddunt, si non per omnia secundum jus naturæ, quod multos apud populos ex parte quasi obliteratum alibi ostendimus, certe secundum pacta cum quibus que inita, aut secundum mores."

Again, he says, (s. 2.) " A latronibus captos capientium non fieri, supra dicentem audivimus Ulpianum. Idem captos à Germanos ait libertatem amittere. Atqui apud Germanos latrocinia, quæ extra civitatis cujusque fines fiebant, nullam habebant infamiam, quæ verba sunt Cæsaris, etc. Idem alibi Cattos nobilem Germaniæ populum latrocinia agitasse dicit. Apud eundem Garamantes latrociniis facunda gens ; sed gens tamen. Illyrici sine discrimine maris proedas agere soliti ; *de iis tamen triumphus fuit ; Pompeio de piratis non fuit. Tantum discrimen est inter populum quantumvis sceleratum et inter eos, qui, cum populus non sint, sceleris causa coëunt.*"

Again, he says, (*lib. 3. c. 9. s. 16.*) " Eae vexo res quæ intra presidia perductæ nondum sunt, quanquam ab hostibus occupatæ, ideo postliminii non egent, quia dominum nondum mutarunt, ex gentium jure. Et quæ *piratæ* aut *latrones* nobis eripuerunt non opus habent postliminis, ut Ulpianus et Javolenus

sing my dissent from the opinion which has just been delivered.

1820.

U. States
v.
Smith.

responderunt ; quia *jus gentium* illis non concessit ut jus domini mutare possint, &c. Itaque res ab illis captæ ubicunque reperiunter vindicari possunt, nisi quod ex naturali jure alibi censuimus ei qui suo sumtu possessionem rei adeptus est tantum esse reddendum, quantum dominus ipse ad rem recuperandam libenter impensurus fuerat."

And (*id. s.* 17.) " Potest tamen lege civili aliud constitui ; sicuti lege Hispanica naves a piratis captæ eorum fiunt, qui eas eripiunt piratis ; neque enim iniquum est, ut privata res publicæ utilitati cedat, presertim in tanta recuperandi difficultate. Sed lex talis non obstabit exteris, quo minus res suas vindicent."

Again ; he says, (*lib.* 2. *c.* 17. *s.* 20.) " Ex neglectu tenuntur reges ac magistratus, qui ad inhibenda *latrocinia* et *piraticam* non adhibent ea quae possunt ac debent remedia ; quo nomine damnati olim ab Amphictionibus Scyrii.  Quae potestatem predarum in maris ex hoste agendarum per codicillos plurimis dedissent, et eorum nonnulli res amicorum rapuissent, desertaque patriae mari vagarentur ac ne revocati quidem redirent, an rectores eo nomine tenerentur, aut quod malorum hominum usiessent opera, aut quod cautionem non exigissent. Dixi eos in nihil amplius teneri, quam ut noxios, si reperiri possent, punirent, aut dederent; *praeterea in bona raptorum jus reddi curarent.*"

Again ; he says, (*Id. c.* 18. *s.* 2, 3.) " *Piratae* et *latrones* qui civitatem non faciunt, *jure gentium* niti non possunt, &c. Sed interdum tales qui sunt jus legationis nanciscuntur fide data, ut olim fugitivi in saltu Pyrenaeo."

Again ; (*lib.* 3. *c.* 13. *s.* 15.) " Repudiandus ergo Cicero (*De Offic. lib.* 3. *cap.* 29.) cum ait perjurium nullum esse predonibus pactum pro capite pretium non adservatur, nec si juratum quidem sit ; quia *pirata* non sit ex perduellium numero desinitus, sed communis hostis omnium, eum quo nec fides esse debeat, nec jus jurandum commune, &c.  Atque sicut in jure gentium constituto differe hostem a pirata verum est, et a nobis infra ostendetur ; ita hic ea differentia locum habere non potest,

The only question of any importance in this case
is, whether the act of the 3d of March, 1819, be a

ubi, etsi personae jus deficiat cum Deo negotium est ; qua de
causa juramentum voti nomine nuncupatur.　Neque id quod
sumit Cicero verum est, nullum esse cum praedone juris socie-
tatem.　Nam depositum ex ipso gentium jure reddendum latroni,
si dominus non apparet recte Tryphonino responsum est."

These passages abundantly show the opinion of Grotius, that
piracy by the law of nations is the same thing as piracy by the
civil law ; and though he no where defines the crime, in pre-
cise terms, yet there seems to be no doubt as to what he un-
derstood to be comprehended in that crime.　*Piratae, latrones,
prædones*, are used to denote the same class of offenders ; the
first term being generally applied to robbers or plunderers on
the sea, and the others to robbers or plunderers on land.

The terms are, indeed, convertible in many instances in the
civil law.　Thus, in the title, De Lege Rhodia de Jactu, (*Dig.
lib.* 14. *tit.* 2. *s.* 3.) it is said, " Si navis a *piratis* redempta sit,
Servius, Osilius, Labeo, omnes conferre debere aiunt.　Quod
vero *praedones* abstulerint, cum perdere cujus fuerit, nec con-
ferendum ei qui suas merces redimerit."

Bynkershoek, (*Quæst. Jur. Pub. lib. c.* 17.) treating on the
subject of piracy, says, " interest scire qui *piratae* ac *latrones*
sunt, nam ab his capta dominium non mutant neque adeo postli-
minio egent.　Sic docet ratio ; sic auctoritas juris in *l.* 19. *s.*
2. *l.* 24. and *l.* 27. de Capt. et Postlim. rev. (*Dig. lib.* 49. *tit.*
15.) et sic ex pactis quarandam gentium supra probavi.　Non
est igitur ut addam auctoritates *Grotii de Jure B. et. P. l.* 3. *c.*
9. *s.* 16.　*Alberici Gentilis de jure belli lib.* 1. *c.* 4.　*Zoucheii
de Jure feciali, p.* 2. *s.* 8. *qu.* 15., aliorumque plurium in ean-
dem sententiam.　*Qui autem nullius principis auctoritate sive
mari sive terra*, RAPIUNT, PIRATARUM PRAEDONUMQUE *vocabulo
intelliguntur.*"

Azuni (*Part* 2. *c.* 5. *s.* 3 ) says, " A pirate is one who roves
the sea in an armed vessel without any commission or passport
from any prince or sovereign state, solely on his own authority,

constitutional exercise of the power delegated to Congress of "defining and punishing piracies?"

and for the purpose of seizing by force, and appropriating to himself without discrimination, every vessel he may meet. For this reason pirates have always been compared to robbers. The only difference between them is, that the sea is the theatre of action for the one, and the land for the other." (s. 11.) "Thus, as pirates are the enemies of the human race, piracy is justly regarded as a crime against the universal laws of society, and is every where punished with death. As they form no national body, as they have no right to arm, nor make war, and on account of their indiscriminate plunder of all vessels are considered only as public robbers, every nation has a right to pursue, and exterminate them, without any declaration of war. For these reasons it is lawful to arrest them, in order that they may undergo the punishment merited by their crimes." (s. 12.) "Pirates having no right to make conquests, cannot, therefore, acquire any lawful property in what they take ; for the law of nations does not authorize them to deprive the true owner of his property, who always retains the right of reclaiming it wherever it may be found. Thus, by the principles of common law, as well as the law of nature, at whatever period, or in whatever manner, things taken by a pirate may be recovered, they return again to their former owners, who lose none of their rights by such unjust usurpation." (See *Azuni, part. 2. c. 5. art. 3. p.* 351. 361. *Mr. Johnson's translation.*)

Lord Bacon, in his dialogue *De Bello Sacro* says, " Indubitatum semper fuit, bellum contra *piratas* juste geri posse per nationem quamcumque, licet ab iis minime infestatam et læsam, &c. &c. Vera enim causa hujus rei haec est, quod *piratæ communes humani generis hostes sint* ; quos idcirco omnibus nationibus persequi incumbit, non tam propter metus proprios quam *respectu fœderis inter homines sociales.* Sicut enim quædam sunt fœdera inscriptis et in tractatus redacta contra hostes particulares inita ; ita naturalis et tacita confœderatio inter

1820.

U. States
v.
Smith.

The act declares, that any person who shall commit
on the high seas the crime of piracy as *defined by the*

omnes homines intercedit contra communes societatis humanæ
hostes." (10 *Bac. Works*, 313, 314. *edit.* 1803.)

Martens, in his Essay on Privateers, Captures and Recap-
tures, (*c.* 1. *s.* 1.) says, " L'armateur diffère du *Pirate*, (1.)
Le premier est muni d'une commission ou de lettrès de marque
du souverain, dont le pirate est destitué. (2.) L'armateur sup-
pose le cas d'une guerre, (ou du moins celui de represailles,)
le pirate pille au sein de la paix comme au milieu de la
guerre. (3.) L'armateur s'oblige d'observer les ordonnances et
les instructions qui lui ont été données, et de n'attaquer qu'en
consequence de celles ci de l'ennemi, et ceux des vaisseux neu-
tres qui font un commerce illicite, le pirate pille indistincte-
ment les vaisseaux de toutes les nations, sans observer même
les loix de la guerre."

Rutherforth (*Inst. b.* 2. *c.* 9. *s.* 9. *p.* 481.) speaking with
reference to the law of nations, says, " All wars of a nation
against its external enemies are not public wars.  To make a
war a public one, both the contending parties must be public
persons ; that is, it must be a war of one nation against another,
&c.  Where a nation makes war upon *pirates* or *other robbers*,
though these are external enemies, the war will be a mixed
one ; it is public on one side, because a nation or public per-
son is one of the parties ; but it is private on the other side,
because the parties on this side are private persons, who act
together occasionally, and are not united into a civil society.
A *band of robbers* or a *company of pirates* may in fact be united
to one another by compact, &c.  But they are still, by the law
of nature, only a number of unconnected individuals ; and con-
sequently, in the view of the law of nations they are not con-
sidered as a collective body or public person.  For the com-
pact by which they unite themselves is void, because the mat-
ter of it is unlawful, &c. &c.  The common benefit which a
*band of robbers* or a *company of pirates* propose to themselves
consists in doing harm to the rest of mankind."

*law of nations*, shall be punished with death. The special power here given to define piracy, can be at-

Woodeson, (*Lect.* 34. *vol.* 2. 422.) treating on captures at sea, after stating that the law of nations is part of the laws of England, and that captures at sea may happen either by pirates, or by way of reprisal, or as prize of war, says, " *Piracy, according to the law of nations, is incurred by depredations on or near the sea, without authority from any prince or State.*" He then quotes the opinion of Sir Leoline Jenkins with approbation, that it is piracy, not only when a man robs without any commission at all, but when, having a commission, he despoils those with whom he is not warranted to fight or meddle, such as are de legantia vel amicitia of the prince or state which hath given him his commission. He then adds : " But according to the judgments of our domestic tribunals, a bare assault without taking or pillaging something away does not constitute the crime, though Molloy pretends, that by the law of nations it is otherwise. Yet it does not seem necessary that any person should be on board the pillaged vessel." " If these violations of property be perpetrated by any national authority, they are the commencement of a public war ; if without that sanction, they are *acts of piracy.*" He then proceeds to state several cases which had arisen in the Admiralty of England, and sums up his remarks as follow : " The foregoing particulars are the more deserving of consideration, because it seems agreed that when a piratical taking is ascertained, it becomes a clear and indisputable consequence that there is no transmutation of property. No right to the spoil vests in the piratical captor ; no right is derivable from them to any recaptors in prejudice of the original owners. These *piratical seizures* being wholly unauthorized, and highly criminal by *the law of nations*, there is no pretence for devesting the dominion of the former proprietor. This principle, therefore, ' a piratis et latronibus capta dominium non mutant,' is the received opinion of ancient civilians and more modern writers, on general jurisprudence. The same doctrine was maintained in our Courts of Common Law long antecedent to the great cultivation and improvements made in the science of the law of na-

1820.

U. States
v.
Smith.

tributed to no other cause, than to the uncertainty which it was known existed on this subject in the

tions. And he remarks in a note, (*p.* 427. note *n.*) " I have looked into the indictment against Luke Ryan, tried at the Admiralty Sessions, March, 1782, for piracy, and who is alleged to have had a Dutch commission. He was indicted not *for piracy generally by the law of nations,* but for that, being a natural born subject, he piratically, &c. against the form of the statute." From the whole scope of Mr. Woodeson's observations on the subject of piracy, it is very clear that he considered piracy, as punishable by the law of the admiralty, to be no other than piracy by the law of nations. The definition of piracy, and Mr. Woodeson's comments are cited with approbation by Mr. Gwillim in his late edition of Bacon's Abridgment. (5 *Bac. Abr.* 310. *edit.* 1807. London.)

Burlamaqui (*Part.* 2. *c.* 7. *s.* 41.) says : " Lastly, as to the wars of *robbers and pirates,* if they do not produce the effects above-mentioned, (transmutation of property on capture,) nor give to those pirates a right of appropriating what they have taken, it is *because they are robbers and enemies of mankind,* and, consequently, persons whose acts of violence are manifestly unjust, which authorizes all nations to treat them as enemies."

Thus far, the authorities cited are such as profess to treat of piracy *in terms* according to the law of nations, the notion of which was manifestly derived from the civil law, " on which," as Sir William Scott observes, (The Maria, 1 *Rob.* 340.) " great part of the law of nations is founded." Indeed, in the law of England, it is treated altogether as a *civil law* offence, and referred to that law for its definition and punishment. Piracies and depredations at sea, are capital offences by the civil law. (5 *Bac. Abr.* Piracy, 311. *Edit. ubi supra,* 3 *Inst.* 112. *Hawk. P. C. c.* 37. 2 *East, P. C.* 796. 4 *Bl. Comm.* 72.) The commentaries of the common law writers on the subject of piracy will be more fully considered hereafter.

Let us now advert to the definitions of the civil law and maritime writers.

, law of nations, and which it must have been the in-
tention of the framers of the constitution to remove,

In the Novels (*Nov.* 134. *tit.* 17. *c.* 13.) it is declared, " Pro
*furto* autem nolumus omnino quodlibet membrum abscindi, aut
mori; sed aliter eum castigari. *Fures* autem vocamus *qui
occulte et sine armis* hujusmodi delinquunt. *Eos vero, qui vio-
lenter aggrediuntur aut cum armis aut sine armis in domibus aut
itineribus* aut IN MARI *poenis eos legalibus subdi jubemus.*"

Calvinus, in his *Lexicon Juridicum*, says : " *Piratae* dicuntur
*praedatores marini ;* sic dicti vel a pirata, qui prius maria in-
festavit, vel a Graeco πιϱανω, id est, transeo, quod conspecta
insula in illam transirent, jam praedaturi. Hinc piratica ars est,
quam exercent." In the French *Code des Prises*, (*Edition of
M. Dufriche Foulaines, Paris*, 1804, *tom.* 1. *p.* 6.) the editor
says : " Le pirate est celui qui parcourt les mers avec une
batiment armé sans commission ou patente d'aucune etat, dans
la vue exclusive de s'approprier tous les navires *par la force*.
La piraterie est un assassinat ; *tout puissance doit faire arreter
et juger* des pareils brigands, et en purger la terre." Emerigon
(*Assur. tom.* 1. *c.* 12. *s.* 28. *p.* 523.) says : " Les Pirates sont
ceux qui courent les mers sans commission d'aucun Prince ni
Etat souverain pour *depreder* les vaisseaux qu'ils rencontrent."
" Les Ennemis sont ceux, qui autorisés par un prince, on etat
souverain font la guerre dans la forme établie par le droit des
gens ; au lieu que les Pirates sont de simples particuliers
qui *depredent* le premier navire qu'ils recontrent." " Les
hostilités se commettent de nation à nation ; au lieu que la pi-
raterie est un *brigandage qui s'exerce sur mer* par gens sans
aveu, et *d'une maniere furtive*." " Les pirates sont ennemis
du genre humain." " La piraterie, on le *brigandage sur mer*,
est un delit contre la loi universelle des societies," &c. And
Emerigon fortifies his opinion on this subject, by citations from
the civil law, from other maritime writers, and from Black-
stone's Commentaries. It is plain, therefore, that he consider-
ed piracy as defined in the civil law, the maritime law, and the
common law of England, as the same crime.

by conferring on the national legislature the power which has been mentioned. It was well known to

Bouchard (cited in 1 *Emerigon*, c. 12. s. 28. p. 527.) " Les pirates n'ont pas le droit des armes. Ce sont des *voleurs* et assassins, qui ne forme pas un corps d'etat. Ennemis des toutes les nations contre lesquelles ils exercent indistinctement leurs brigandages, toutes les nations sont en droit de courir sus, et de les exterminer sans declaration de guerre."

M. Bonnemant, in his edition of the Chevalier De Habreu's treatise on maritime captures, (*edit.* 1802, *Paris, part.* 1. c. 1. s. 5. p. 15. *note*,) says, " les pirates sont ceux dont la navigation, les actions et les entreprises ne sont autorisées ni avoneés par aucune puissance, qui agissent sur la propriété publique et particulière contre le vœu de toutes les nations." And De Habreu himself (as translated by M. Bonnemant, *Part* 2. c. 6. s. 1. p. 100, 101.) says, " Selon la définition de la prise, il paroît que le droit d'armer en course n'appartient qu'à ceux qui sont ennemis autorisés, appellés, en Latin, *hostes*. D'ou il s'ensuit que les *brigands* et les *pirates* sont exclus de ce droit; qu'ils ne peuvent prétendre aux privilèges que les loix de la guerre accorde aux ennemis, et qu'au contraire ils méritent d'être punis rigoureusement comme les malfaiteurs, et qu'on est autorisé à se saisir de tous leurs biens." " De tous les tems les pirates ont été regardés comme des voleurs publics et des perturbateurs de la paix. C'est pour cela qu'il est libre à quiconque s'en saisit de leur ôter la vie sans se rendre coupable d'injustice. La prejudice qu'ils causent à la tranquillité publique, à la liberté du commerce, et à la sûreté de la navigation, a fait que toutes les nations se sont accordées à les poursuivre et à les punir avec la plus grande rigueur."

Ferriere (*Dict. du Droit. art. Pirates*) says, " Pirates sont des corsaires, ecumeurs de mer, qui font des courses sur mer sans aveu ni autorité du Prince ou du Souverain."

In the Encyclopedie des Sciences, &c. (*Edit.* 1765, *art. Pirate*,) it is said, " On donne ce nom (Pirate) à *des bandits*, qui

the members of the Federal Convention, that in trea-
tises on the law of nations, or in some of them at

maitres d'une vaisseau vont *sur mer attaquer les vaisseaux* mar-
chands pour *les piller et les voler.*"

Valin (*Traité des Prises, c.* 3. *s.* 2. *p.* 29.) says, " Or la
peine des *pirates* ou *forbans* est celle du dernier supplice, sui-
vant l'opinion commune ; parceque ce sont des ennemis de-
clarés de la societé, *des violateurs* de la foi publique and *du droit
des gens, des voleurs publiques à main armé et à force ouverte.*"

Straccha says, (*De Naut. Part.* 3. *n.* 30.) " Inter Piratam
et Latronem nulla alia est differentia nisi quia *Pirata deprae-
dator est in mari.*"

Casaregis (*Disc.* 64. *n.* 4.) says, " Proprie pirata ille discitur
qui sine patentibus alicujus principis ex propria tantum et pri-
vata auctoritate per mare discurrit *depredendi causâ.*"

Dr. Brown (2 *Civ. and Adm. Law,* 461, 462.) says, " Piracy
is *depredation* without authority from any Prince or State, or
transgression of authority by *despoiling* beyond its warrant."
" *Unlawful depredation* is of the essence of piracy."

Beawes (*Lex Mercatoria art. Piracy, p.* 250.) says, " A pi-
rate is a *sea thief,* or an enemy of human kind, also aims at en-
riching himself by *marine robberies* committed either by force,
fraud, or surprise, on merchants or other traders at sea."

Molloy (*b.* 1. *c.* 4. *s.* 1.) says, " A pirate is a *sea thief,* or
hostis humani generis, who, for to enrich himself either by sur-
prise, or open force, sets upon merchants or others trading at
sea, ever spoiling their lading, if by possibility they can get the
mastery."

Marshall (*Insur. c.* 12. *s.* 11. *p.* 556.) says, " The crime of
piracy or *robbery on the high seas,* is an offence against the *uni-
versal law of society.*"

It is also said in 16 Viner's Abridgment, (*art. Pirate and
Piracy, A. p.* 556.) and in Cowell's Interpreter, (*Pirate,*) " A
pirate is now taken for one who maintains himself by *pillage
and robbery at sea.*"

Comyn's (*Dig. Admiralty, E.* 3.) defines piracy thus : " Pi-
racy is when a man commits *robbery upon the sea ;*" and he
cites as authority, 3 *Inst.* 113. and 1 Sir *Leol. Jenk.* 94.

1820.

U. States
v.
Smith.

least, definitions of piracy might be found; but it must have been as well known to them that there

Lord Coke says, (3 *Inst.* 113. *Co. Litt.* 391.) " This word pirate, in Latin, pirata, from the Greek word πειρατης, which again comes from πειραν a transcendo mare, of roving upon the sea; and, therefore, in English, is called a rover and *robber upon the sea.*"

Sir Leoline Jenkins, in his charge at the admiralty sessions in 1668, says : " You are, therefore, to inquire of *all pirates* and *sea rovers*, they are in the law *hostes humani generis*, enemies, not of one nation, or of one sort of people only, but of all mankind. They are outlawed as I may say, by the laws of all nations; that is, out of the protection of all princes, and of all laws whatsoever. Every body is commissioned, and is to be armed against them as rebels and traitors to subdue and root them out. That which is called *robbing upon the highway, the same being done upon the water, is called piracy.* Now, robbery as it is distinguished from thieving or larceny, implies not only the actual taking away of my goods, while I am, as we say, in peace, but, also, the putting me in fear by taking them by force and arms, out of my hands, or in my sight and presence. When this is done upon the sea, without a lawful commission of war or reprisals, it is downright piracy." *Vol.* 1. *p.* 86.

Again ; in another charge, he says, (*vol.* 1. *p.* 94.) " The next sort of offences pointed at in the statute [28 Hen. VIII. ch. 15.] are robberies ; and a robbery, when it is committed upon the sea, is what we call piracy. A robbery, when it is committed upon the land, does imply three things, 1. That there be a violent assault ; 2. That a man's goods be actually taken from his person or possession ; 3. That he who is despoiled be put in fear thereby. When this is done upon the sea, when one or more persons enter on board a ship with force and arms, and those in the ship have their ship carried away by violence, or their goods taken away out of their possession, and are put in fright by the assault, this is piracy ; and he that does so is a pirate or a robber within the statute."

was not such a coincidence on this subject, as to ren-
der a reference to that code a desirable or safe mode

The statute of Henry VIII. here referred to, does not con-
tain any description of piracy. Before that statute, piracy was
only cognizable by the civil law in the Admiralty Court. But
the statute gave the High Commission Court (created by that
statute) jurisdiction of " all treasons, felonies, *robberies*, mur-
ders, and confederacies committed in, or on the sea," &c. The
term *piracy* is not found in the statute, and it is only as a *robbery*
upon the sea that the High Commission Court has jurisdiction
of piracy. Sir Leoline Jenkins, therefore, refers to the civil
law definition of the offence of *piracy;* for it is agreed on all
sides, that the statute of Henry VIII. has not altered the nature
of the offence. (See 1 *Hawk. P. C. b.* 1. *c.* 37.)

Targa (as I find him quoted by his Spanish translator, *Gison,
Reflex. c.* 61. *De los Corsarios o Pyratas,* for the original is
not before me) says, " Esta (depredacion) se comete de dos
modos, o por causa de guerra declarada entre dos naciones, &c.
o por modo *de hurto violento como Ladrones del Mar* y como
*hacen los robos en terra los salteadores de caminos;* y esto se
compuela con la authentica del Derecho Civil, (a) que dis-
tingue la pyrateria del robo," &c. Again; " A los *pyratas*
como tambien a los *salteadores de camino,* enemigos comunes,
opresores de la libertad y comercio, y como a *violadores del
derecho de las gentes,* puede qualquiera oponerse y los ministros
y subditos del principe pueden perseguir los y prender los
aunque sea fuera del dominio y se hayan refugiado a los estados
confinantes, sin que per esso quede violada la jurisdiccion; y
presas que sean, se pendran en poder de la justicia de aquel
Principe en cuyo estado han sido cogidos." Again; " Y assi
concluyo, diciendo, que deben todos guardarse en el mar de
Pyratas, y en la tierra de Ladrones; y *todo aquel,* que en el
mar, playa, puerto, ò otro seno de mar, ò rio navigable, *roba* ò
*apresa,* ya sea amigo, esto es, enemigo no declarado, y tambien
los paysanos, ò enemigos propriamente tales, ò con patente,
estandarte, ò sin el, ò con *engano, ò fuerza, siempre es pyrata.*"

*a Dig. lib.* 49. *tit.* 15. *l.* 19. *s.* 2.

of proceeding in a criminal, and especially in a capi-tal case.   If it had been intended to adopt the defi-

Citations from civilians and maritime writers to the same ef-fect might be multiplied ; but they would unnecessarily swell this note.   It remains only to notice the doctrines which have been held by the tribunals of Great Britain, and asserted by her common law writers on the subject of piracy.

Hawkins (*P. C. b.* 1. *c.* 37.) says, " A pirate at the common law is a person who commits any of those acts of piracy, *rob-bery and depredation upon the high seas,* which, if committed upon land, would have amounted to felony there."

From the terms of this definition, (if it may be so called,) it might be supposed, that by piracy *at the common law,* something was meant peculiar to that law, and not piracy by the civil law, or the law of nations.   But that was certainly not the meaning of the writer.   For it is perfectly well settled, that piracy is no felony at common law, being *out of its jurisdiction;* and before the statute of 28 Henry VIII. c. 15. it was only punishable by the *civil law.*   That statute, however, does not (as has been already stated) alter the nature of the offence in this respect ; and, therefore, a pardon of all felonies generally, does not ex-tend to it.   (2 *East's P. C.* 796.   1 *Hawk.* c. 37. s. 6. 8. 10. 1 *Hale,* 354.   2 *Hale,* 18.   3 *Inst.* 112.)   And it was also de-termined in Rex v. Morphes, (*Salk.* 85.) that " no attainder for piracy wrought corruption of blood, *for it was no offence at common law.*   (2 *East's P. C.* 796.   *Co. Litt.* 391. *a.*)   The intention of Hawkins must have been to use the phrase " at the common law" in its most comprehensive sense ; in which sense the *law of nations* itself is a part of the common law ; since all offences against the law of nations are punishable by the criminal jurisprudence of England.

Blackstone, in the Commentaries, (4 *Comm.* 71. 73.) evidently proceeds upon this notion.   He says, " The crime of piracy, or *robbery and depredation* upon the high seas, is an offence against the *universal law of society,* a pirate being, according to Sir Edward Coke, *hostis humani generis.*"   He goes on to re-

nition or definitions of this crime, so far as they were
to be collected from the different commentators on

mark, that every community hath a right to punish it, for it is
a war against all mankind.   He then gives the definition of pi-
racy by Hawkins, as the definition of the common law ; and
then states the several statutes made in England on the subject
of piracy, concluding thus : " These are the principal cases
in which the *statute* law of England interposes *to aid and en-*
*force the law of nations as a part of the common law*, by inflict-
ing an adequate punishment for offences against that universal
law committed by private persons."

The state trials for piracy in the reign of William III. are
entitled to great consideration, both from the eminent talents
of the Judges who constituted the tribunal, and the universal ap-
probation of the legal principles asserted by them.   It is, also,
worthy of remark, that in none of these indictments was there
any averment that the prisoners were British subjects ; and
most of them were for piracies committed on foreign subjects
and vessels.   They were all framed as indictments at common
law, or for general piracy, without reference to any British
statute.

In Rex v. Dawson and others, (8 *William* III. 1696.   5 *State*
*Trials*, 1 *edit.* 1742.) the Court was composed of Sir Charles
Hedges, Judge of the High Court of Admiralty, (as President,)
Lord Chief Justice Holt, Lord Chief Justice Treby, Lord Chief
Baron Ward, Mr. Justice Rookby, Mr. Justice Turton, Mr.
Justice Eyre, Mr. Baron Powis, and Doctors Lane, King, and
Cook, (Civilians.)   Sir Charles Hedges delivered the charge
to the grand jury, and among other things, directed them as
follows :   " Now piracy is only a *sea term* for robbery, *piracy*
*being a robbery committed within the jurisdiction of the Admiral-*
*ty.*   If any man be assaulted within that jurisdiction, and his
ship or goods violently taken away without legal authority, this
is *robbery and piracy*.   If the mariners of a ship shall violently
dispossess the master, and afterwards carry away the ship itself,
or any of the goods, or tackle, apparel or furniture, with a fe-

1820.
U. States
v.
Smith.

this code, with all the uncertainty and difficulty attending a research for that purpose, it might as well

lonious intention, in any place where the Lord Admiral hath, or pretends to have, jurisdiction, this is also robbery and piracy. The intention will, in these cases, appear, by considering the end for which the fact is committed, and the end will be known, if the evidence show you what hath been done. The King of England hath not only an empire or sovereignty over the British seas for the punishment of piracy, *but in concurrence with other Princes and States, an undoubted jurisdiction and power in the most remote parts of the world. If any person, therefore, native or foreigner*, Christian or Infidel, Turk or Pagan, *with whose country we are in amity, trade or correspondence, shall be robbed or spoiled,* in the narrow or *other seas, whether the Mediterranean, Atlantic, or Southern, or any branches thereof, either on this or the other side of the line,* IT IS A PIRACY, *within the limits of your inquiry, and cognizable by this Court.*" It seems impossible to doubt, that Sir Charles Hedges here understood piracy to be punishable *by all nations,* as a crime *against the law of nations,* and that its true definition is the same in the civil and common law, as in the law of nations, viz. robbery upon the seas; and that, as such, it was punishable by the British Courts in virtue of their general concurrent jurisdiction on the seas.

In Rex v. Dawson and others, there were several indictments.  1. The first was for piracy in robbing and plundering the ship Gunsway, *belonging to the Great Mogul and his subjects,* in the Indian seas.  2. The second for piracy, in forcibly seizing and feloniously taking, stealing, and carrying away a merchant ship called the Charles 2d. *belonging to certain of his majesty's subjects unknown,* on the high seas, about three leagues from the Groyne in Spain.  3. The third was for piracy *on two Danish ships.*  4. The fourth for piracy *on a Moorish ship.* Dawson pleaded guilty; and the other prisoners not guilty, and were upon trial convicted, and all sentenced to death accordingly.  It appeared in evidence that the prisoners were part of the crew of the Charles the 2d, and rose upon her near

at once have been adopted as a standard by the constitution itself. The object, therefore, of referring

the Groyne, and afterwards ran away with her, and committed the piracies. The Solicitor General, in stating the case to the jury, said, "They (the prisoners) are arraigned for a very high crime, a robbery upon the seas." "These are crimes *against the law of nations,* and worse than robbery on land." Lord Chief Justice Holt, in delivering the charge to the jury, said, "that there was a piracy committed on the ship Charles is most apparent by the evidence that hath been given ; that is, a force was put upon the master, and some of the seamen on board her, who because they would not agree to go on a piratical expedition, had liberty to depart and be set ashore, &c. &c. So that I must tell you beyond all contradiction, the *force put upon the captain,* and taking away this ship, called the Charles 2d, is piracy."

On the trial of Kidd and others for piracy, &c. in 13th of William III. 1713, (5 *State Trials, edit.* 1742.) there were several indictments. 1. The first was against William Kidd for the murder of one W. Moore, on the high seas, near the coast of Malabar, in a vessel called the Adventure Galley, of which Kidd was commander. 2. The second was against all the prisoners for piracy in seizing and running away with a certain merchant ship called the Quedash Merchant, then being *a ship of certain persons to the jurors unknown,* (not stated to be British subjects,) upon the high seas about ten leagues from Cutsheen in the East Indies. In fact, the vessel and cargo appeared by the evidence to belong to Armenian merchants, and then on a voyage from Bengal to Surat. Lord Chief Baron Ward, in charging the jury on this indictment, said, "the crime charged upon them (the prisoners) is *piracy,* that is, *seizing and taking this ship and the goods in it piratically and feloniously. This ship belonged to people in amity with the king of England.*" "If this was a capture on the high seas, and these were the goods of persons in amity with the king, and had no FRENCH PASS, then it is a plain piracy ; and if you believe the witnesses, here is

its definition to Congress was, and could have been no other than, to enable that body, to select from sources it might think proper, and then to declare, and with reasonable precision to define, what act or acts should constitute this crime; and having done

the taking of the goods and ship of persons in amity, and converting them to their own use.   Such a taking as this would be *felony ; and being at sea, it will be piracy.*"   The prisoners were convicted and sentenced to death.   There were four other indictments, three for piracy on Moorish ships, and one for piracy on a Portuguese ship; and all the prisoners were convicted and sentenced.   Mr. Justice Turton, in charging the jury on one of these indictments, said, " pirates are called hostes humani generis, the enemies to all mankind."

The case of Rex v. Green (4 *Anne*, 1704.   5 *State Trials*, 573.  *edit.* 1742.) was a libel or indictment in the Court of Admiralty in Scotland for piracy, manifestly treated both in the libel and the arguments as a crime against the law of nations, and as such, also against the law of Scotland.

In Erskine's Institutes of the law of Scotland, in treating of the crime of piracy, the author says, " piracy is that particular kind of robbery which is committed on the seas." (*Ersk. Inst. b. 4. tit. 4. s. 65.*)   He had in the preceding section, (64.) declared that, " robbery is truly a species of theft ; for both are committed on the property of another, and with the same view of getting gain ; but robbery is aggravated by the *violence* with which it is attended."   The definition of both these crimes seems not at all different from that of the common law.

The foregoing collection of doctrines, extracted from writers on the civil law, the law of nations, the maritime law, and the common law, in the most ample manner confirms the opinion of the Court in the case in the text; and it is with great diffidence submitted to the learned reader to aid his future researches in a path, which, fortunately for us, it has not been hitherto necessary to explore with minute accuracy.

so, to annex to it such punishment as might be thought proper. Such a mode of proceeding would be consonant with the universal practice in this country, and with those feelings of humanity which are ever opposed to the putting in jeopardy the life of a fellow-being, unless for the contravention of a rule which has been previously prescribed, and in language so plain and explicit as not to be misunderstood by any one. Can this be the case, or can a crime be said to be defined, even to a common intent, when those who are desirous of information on the subject are referred to a code, without knowing with any certainty, where it is to be found, and from which even those to whom it may be accessible, can with difficulty decide, in many cases, whether a particular act be piracy or not? Although it cannot be denied that some writers on the law of nations do declare what acts are deemed piratical, yet it is certain, that they do not all agree; and if they did, it would seem unreasonable to impose upon that class of men, who are the most liable to commit offences of this description, the task of looking beyond the written law of their own country for a definition of them. If in criminal cases every thing is sufficiently certain, which by reference may be rendered so, which was an argument used at bar, it is not perceived why a reference to the laws of China, or to any other foreign code, would not have answered the purpose quite as well as the one which has been resorted to. It is not certain, that on examination, the crime would not be found to be more accurately defined in the code thus referred to, than in any writer on the law

1820.

U. States
v.
Smith.

of nations; but the objection to the reference in both cases is the same; that it is the duty of Congress to incorporate into their own statutes a definition in *terms*, and not to refer the citizens of the United States for rules of conduct to the statutes or laws of any foreign country, with which it is not to be presumed that they are acquainted. Nor does it make any difference in this case, that the law of nations forms part of the law of every civilized country. This may be the case to a certain extent; but as to criminal cases, and as to the offence of piracy in particular, the law of nations could not be supposed of itself to form a rule of action; and, therefore, a reference to it in this instance, must be regarded in the same light, as a reference to any other foreign code. But, it is said, that murder and robbery have been declared to be punishable by the laws of the United States, without any definition of what act or acts shall constitute either of these offences. This may be; but both murder and robbery, with arson, burglary, and some other crimes, are defined by writers on the common law, which is part of the law of every State in the Union, of which, for the most obvious reasons, no one is allowed to allege his ignorance in excuse for any crime he may commit. Nor is there any hardship in this, for the great body of the community have it in their power to become acquainted with the criminal code under which they live; not so when acts which constitute a crime are to be collected from a variety of writers, either in different languages, or under the disadvantage of translations, and from a code with whose provisions even profes-

sional men are not always acquainted. By the same clause of the constitution, Congress have power to punish offences against the law of nations, and yet it would hardly be deemed a fair and legitimate execution of this authority, to declare, that all offences against the law of nations, without defining any one of them, should be punished with death. Such mode of legislation is but badly calculated to furnish that precise and accurate information in criminal cases, which it is the duty, and ought to be the object, of every legislature to impart.

Upon the whole, my opinion is, that there is not to be found in the act that definition of piracy which the constitution requires, and that, therefore, judgment on the special verdict ought to be rendered for the prisoner.

CERTIFICATE. This cause came on to be heard on the transcript of the record of the Circuit Court of the United States for the district of Virginia, and on the question on which the Judges of that Court were divided in opinion, and was argued by counsel. On consideration whereof, this Court is of opinion, that the offence charged in the indictment in this case, and found by the jury to have been committed by the prisoner, amounts to the crime of piracy, as defined by the law of nations, so as to be punishable under the act of Congress, entitled, " an act to protect the commerce of the United States, and punish the crime of piracy." All which is ordered to be certified to the Circuit Court for the district of Virginia.[a]

a Vide APPENDIX, Note IV. for the new act of Congress on the subject of piracy, passed May 15, 1820.