UNITED STATES *v.* WHITE and another.[1]

(*Circuit Court, E. D. Missouri.* March 29, 1886.)

1. COUNTERFEITING — COUNTERFEITING SECURITIES OF FOREIGN NATIONS—LAW OF NATIONS.

Counterfeiting the securities of a foreign nation is an offense against the "law of nations," within the meaning of section 8 of article 1 of the constitution of the United States.

2. SAME.

It is not necessary, in order to make a statute providing a punishment for an offense against the law of nations valid, that it should describe the offense as being one against that law.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

3. Same—Act to Prevent Counterfeiting Securities of Foreign Governments.

Section 6 of the act of May 16, 1884, entitled "An act to prevent and punish counterfeiting within the United States of notes, bonds, or other securities of foreign governments," is valid.

4. Statutes—Construction.

That construction should be placed on the language of a statute which will uphold, rather than that which would defeat it.

Indictment for Counterfeiting Treasury Notes of the Empire of Brazil. Motions to quash, and in arrest.

*William H. Bliss,* for the United States.

*Herring & Kelley* and *Joseph G. Lodge,* for defendants.

Brewer, J., (*orally.*) In the cases of the *United States* against *Joseph H. White and another* there are motions to quash certain indictments and motions in arrest. The question presented in them is as to the validity of an act entitled "An act to prevent and punish counterfeiting in the United States of notes, bonds, or other securities of foreign governments." The power of congress to pass such an act is claimed under section 8 of article 1 of the constitution, which gives to congress power "to define and punish piracies or felonies committed on the high seas, and offenses against the law of nations."

Now, in respect to matters of dealing between this country and foreign nations, the general government is the single representative of our people. No state can enter into any treaty or compact whatever with any foreign nation. The powers the states have are over their own citizens, in local matters. In respect to all matters affecting our relations, or the relations of our citizens, with foreign nations, the general government is the single representative. It alone takes cognizance within our territory of any infraction of the law of nations. "International law" is a term which has not, as yet, perhaps, been fully and accurately defined, or rather the specific matters to which it may extend, and its scope may not be fully settled. It includes the entire body of obligations which one nation owes to another, in respect to its own conduct or the conduct of its citizens towards other nations or their citizens. Of course, in early times, when nations lived in a state of Chinese seclusion, the specific matters to which international law was applied were practically few, but as commercial dealings, travel, and intercourse increased between them, these specific matters largely increased, and will increase the nearer the nations come together. The closer the world comes to a recognition of the poet's dream of "the parliament of man, the federation of the world," the wider will be the scope of international law.

Now, foreseeing all these possibilities in the future, the framers of our constitution gave to congress the power to define and punish offenses against the laws of nations. Judge Story, in the case of *U. S.* v. *Smith,* 5 Wheat. 153, said:

"Offenses against the law of nations cannot, with any accuracy, be said to be completely ascertained and decided in any public code recognized by the

consent of nations. In respect to felonies committed on the high seas, and offenses against the law of nations, there is a peculiar fitness in giving the power to define as well as to punish, and there is not the slightest reason to doubt that these considerations had very great weight in producing the phraseology in question."

Now, does the counterfeiting of securities of a foreign nation come within the reach of international law? I put the question to counsel in the argument: "If this nation should itself engage in the business of counterfeiting the coin or securities of a foreign nation, would not that be treated as an infraction of the law of nations,—a *casus belli?*" and counsel very promptly responded that it would. Well, if the act of the nation in counterfeiting would be an infraction of the law of nations, similarly the act of the citizens of that nation in counterfeiting the same securities would be an infraction.

One of the latest utterances in the matter of international law is the work of David Dudley Field, who prepared a draft of a code therefor, and in his "Outlines of an International Code," second edition, page 626, he recognizes the offense in question as coming within the description of offenses against the law of nations, by declaring that every person commits a public offense who, within the jurisdiction of a nation a party to the Code, forges, among other things, any public security issued, or purporting to have been issued, under the authority of any nation, for the payment of money or delivery of property." Surely it would be a gross infraction, as it seems to me, of the law of nations to turn this nation into a counterfeiting shop for the securities of the world. It is true, the constitution declares as one of the main objects of its existence "to promote the general welfare," and counsel urged that that was limited to the general welfare of the people of this country. Concede that, but in a moral sense it certainly promotes the general welfare of our citizens to see that they do not engage in the business of counterfeiting any valid security; and in a pecuniary sense, as my Brother TREAT well said in our consultation, the counterfeiting of foreign securities may work a direct injury to our own citizens. Take the case at bar. Supposing these securities had been perfected and placed on the market here, and some one, taking a trip to Brazil, had invested in them, and then, on visiting Brazil, found to his dismay that they were all counterfeit. Such citizen of this country would be the pecuniary sufferer; so that both in the highest moral sense and in the lowest pecuniary sense, it is true that the general welfare of this country is promoted by putting a stop to the counterfeiting of any securities.

Our statutes are full of laws designed to prevent wrongs done by our citizens to foreign nations, or citizens thereof; some punish the forming of insurrectionary expeditions here with a view of invading foreign nations, and thus tend to preserve the peace and harmony between nations. Indeed, in the famous Alabama case, the basis of our claim against the English government was not that it had organ-

ized expeditions to prey upon our commerce, but that it had not exercised due precautions to prevent its citizens from thus trespassing upon our commerce. Surely, the counterfeiting of the securities of a foreign nation is one of those things which would tend to interrupt the peaceful relations between two nations, as well as to trespass upon the property rights of individuals and nations.

We neither of us have any doubt but that congress has the power to punish such offenses. And while congress is given the power to define and punish, it is not necessary, in order to make a valid statute, that, upon the face of it, it name the acts denounced as offenses against the law of nations. It is enough if it describes the act, and denounces it with punishment, and that the act in its nature comes within the scope of international obligations.

Further, as a second point, counsel insisted that this sixth section of this statute, under which these indictments were framed, was void, in that it does not incorporate and embrace a declaration of a fraudulent intent, and by its letter punishes the printing and engraving of any instrument of the likeness and similitude of a foreign security, or any part of it. Counsel said, would it be possible that a man could be guilty of a crime who put upon a mere badge or page of a book a single portion of one of the designs found upon a foreign security? Well, we are to place that construction on the language of a statute which will uphold, rather than that which will defeat, the act. The title of the act interprets its scope,—"An act to prevent and punish counterfeiting within the United States." A thing may sometimes be within the letter and not within the spirit of a statute, and therefore without the statute; and sometimes it may be within the spirit, and not within the letter, and still included in the statute; and this, even in criminal cases. It is unnecessary to speculate about such a case as counsel suggests. Here the indictment presents a copy of the security, and charges that it was engraved and printed with an intent to defraud. This brings it within the spirit and letter of the statute.

I think that objection should be overruled. The motions to quash and in arrest will both be overruled, and the cases remanded to the district court for further proceedings.