[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-10234

_____

D.C. Docket No. 01-3399-CV-FAM


ANGEL ENRIQUE VILLEDA ALDANA,
JORGE AUGUSTIN PALMA ROMERO,
OSCAR LEONEL GUERRA EVANS,
LYIONHEL MCINTOSH RODRIGUEZ,
MAREL MARTINEZ,
GUMERZINDO LOYO MARTINEZ,
RIGOBERTO ALVAYERO HERNANDEZ,

Plaintiffs-Appellants,

versus

DEL MONTE FRESH PRODUCE, N.A., INC.,
BANDEGUA,
Compania De Desarrollo De Guatemala,
FRESH DEL MONTE PRODUCE, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**ON PETITION FOR REHEARING EN BANC**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, and PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing En Banc is **DENIED**.

/s/ J. L. Edmondson

_____
CHIEF JUDGE

BARKETT, Circuit Judge, Dissenting from the Denial of Rehearing En Banc:

In concluding that there is no cause of action for a claim of cruel, inhuman, or degrading treatment or punishment under the Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, the panel fails to follow the analysis established by the Supreme Court in Sosa v. Alvarez-Machain, 542 U.S. 692 (2004). Because I believe this creates a "precedent-setting error of exceptional importance" and is "in direct conflict with precedent of the Supreme Court," en banc consideration is warranted and I dissent from the denial of rehearing en banc. See 11th Cir. R. 35-3.

The ATCA grants federal district courts original jurisdiction over any civil action "by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350 (emphasis added). Sosa held that a cause of action may be recognized under the ATCA if a claim "based on the present-day law of nations . . . rest[s] on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized." Sosa, 542 U.S. at 728.

The Court in Sosa directed that ATCA claims "must be gauged against the current state of international law, looking to those sources we have long, albeit cautiously, recognized." Id. at 733. It explained that:

[W]here there is no treaty, and no controlling executive or legislative

act or judicial decision, resort must be had to the customs and usages of civilized nations; and, as evidence of these, to the works of jurists and commentators, who by years of labor, research and experience, have made themselves peculiarly well acquainted with the subjects of which they treat. Such works are resorted to by judicial tribunals, not for the speculations of their authors concerning what the law ought to be, but for trustworthy evidence of what the law really is.

Id. at 734 (quoting The Paquete Habana, 175 U.S. 677, 700 (1900)) (alteration in original).[1] The Court then applied its directive and looked to various international law sources, including binding treaties, customary international norms, and authoritative statements, such as the Restatement (Third) of Foreign Relations Law, to determine whether there was a violation of the "present-day law of nations." Id. at 736-37.

The panel, however, failed to follow the analysis set forth in Sosa.[2] When one looks to the sources of international law identified in Sosa – treaties, judicial

---

[1] Cruel, inhuman, or degrading treatment or punishment is defined as acts which inflict mental or physical suffering, anguish, humiliation, fear and debasement, which fall short of torture. See Convention Against Torture and Other Cruel Inhuman, or Degrading Treatment or Punishment, S. Exec. Rep. 101-30, 2d Sess. 13 (1990). "The difference between torture and cruel, inhuman, or degrading treatment or punishment 'derives principally from a difference in the intensity of the suffering inflicted.'" Restatement (Third) of Foreign Relations Law § 702 (citing Ireland v. United Kingdom, 25 Pub. Eur. Ct. Hum. Rts., ser. A. para. 167 (1978)).

[2] The panel's Sosa analysis with regard to the claims of cruel, inhuman, or degrading treatment or punishment consists solely of noting that "Sosa explains that the International Covenant [on Civil and Political Rights] did not 'create obligations enforceable in the federal courts.'" Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1246-47 (11th Cir. 2005) (per curiam) (quoting Sosa, 542 U.S. at 735. This is clearly an insufficient analysis for determining whether there was a violation of the "present-day law of nations" under Sosa. See Sosa, 542 U.S. at 736-37.

4

decisions, the practice of governments, and the opinions of international law scholars – it is clear that there exists a universal, definable, and obligatory prohibition against cruel, inhuman, or degrading treatment or punishment, which is therefore actionable under the ATCA.

First, numerous restatements, declarations, conventions, and treaties find that cruel, inhuman, or degrading treatment or punishment is proscribed by customary international law. See Universal Declaration of Human Rights, art. 5, G.A. Res. 217A(III), U.N. GAOR, 3d Sess., 1st plen. mtg., U.N. Doc. A/810 (Dec. 12, 1948) ("[N]o one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."); International Covenant on Civil and Political Rights ("ICCPR") art. 7, Dec. 19, 1966, 999 U.N.T.S. 171, 175 ("No one shall be subjected to torture or to cruel, inhuman, or degrading treatment or punishment."); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, pmbl., arts. 1, 16, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 113, 116 ("Each State Party shall undertake to prevent in any territory under its jurisdiction other acts of cruel, inhuman or degrading treatment or punishment which do not amount to torture as defined in article 1."); American Convention on Human Rights, art. 5, 1144 U.N.T.S. 123 (entered into force July 18, 1978); Declaration on the Protection of All Persons

from Being Subjected to Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 1, G.A. Res. 3452, U.N. Doc. A/10034 (Dec. 9, 1975) ("Any act of torture or other cruel, inhuman or degrading treatment or punishment is an offense to human dignity[.]"); Restatement (Third) of the Foreign Relations Law of the United States § 702 (1987) ("A state violates international law if . . . it practices, encourages or condones . . . cruel, inhuman, or degrading treatment").

Second, numerous regional human rights instruments and cases from the International Court of Justice ("ICJ"), European Court of Human Rights ("ECHR"), the Inter-American Commission on Human Rights ("IACHR"), and the African Commission on Human and Peoples' Rights ("ACHPR") also recognize the prohibition of cruel, inhuman, or degrading treatment or punishment. See African Charter on Human and Peoples' Rights, art. 5, June 27, 1981, 21 I.L.M. 58 (1982); European Convention on Human Rights, art. 3, Nov. 4, 1950, E.T.S. no. 005; American Convention on Human Rights, July 18, 1978, 1144 U.N.T.S. 123; Case Concerning Armed Activities on the Territory of the Congo, 2002 I.C.J. 219 (July 10, 2002), 2002 WL 32912050; Media Rights Agenda v. Nigeria, Comm. No. 224/98 (ACHPR 2000), available at www1.umn.edu/humanrts/africa/comcases/224-98.html; Huri-Laws v. Nigeria,

Comm. No. 225/98 (ACHPR 2000), available at

www1.umn.edu/humanrts/africa/comcases/225-98.html; McKenzie v. Jamaica,

Case No. 12.023 (IACHR 2000), available at

http://www1.umn.edu/humanrts/cases/76-02-98.html; Valladares v. Ecuador, Case

No. 11.778 (IACHR 1998); Congo v. Ecuador, Case No. 11.427 (I.A.C.H.R.

1997), available at http://www1.umn.edu/humanrts/cases/1996/ecuador/12-

97.htm; Ireland v. United Kingdom, 2 E.H.R.R. 25 (1979); Affidavit of

International Law Scholars on the Status of Torture, Cruel, Inhuman or Degrading

Treatment, Crimes Against Humanity and Arbitrary Detention under International

Law at 18-29, Doe I v. Liu Qi, 349 F. Supp. 2d 1258 (N.D. Cal. 2004), available at

http://www.cja.org/cases/Liuqi_Docs/Liuqi_ILAff.html (illustrating array of acts

that courts around the world have found to be cruel, inhuman, or degrading

treatment or punishment).

Third, U.S. law and international policy makes abstention from cruel,

inhuman, or degrading treatment or punishment an expectation of all states and

reinforces such abstention as an explicit global norm.  See 7 U.S.C. § 1733(j)

(prohibiting agricultural commodities to countries that practice cruel, inhuman, or

degrading treatment or punishment); 22 U.S.C. § 262d(a)(1) (stating U.S. policy is

to channel international assistance away from countries that practice cruel,

7

inhumane or degrading treatment); 22 U.S.C. § 2151n (prohibiting development assistance to countries that practice cruel, inhuman, or degrading treatment or punishment); 22 U.S.C. § 2304 (prohibiting security assistance to countries that practice cruel, inhuman, or degrading treatment or punishment).

Fourth, numerous U.S. courts have concluded that the prohibition against cruel, inhuman, or degrading treatment or punishment is a norm of customary international law. See De Sanchez v. Banco Central de Nicar., 770 F.2d 1385, 1397 (5th Cir. 1985) (recognizing a "right not to be . . . subjected to cruel, inhuman or degrading punishment" as incorporated into international law); Doe v. Qi, 349 F. Supp. 2d 1258 (N.D. Cal. 2004) (post-Sosa decision stating that cruel, inhuman, or degrading treatment or punishment has been condemned by numerous sources of international law and holding that conduct sufficiently egregious may be found to constitute cruel, inhuman, or degrading treatment or punishment under the ATCA); Tachiona v. Mugabe, 234 F. Supp. 2d 401, 437 (S.D.N.Y. 2002) ("That it may present difficulties to pinpoint precisely where on the spectrum of atrocities the shades of cruel, inhuman, or degrading treatment bleed into torture should not detract from what really goes to the essence of any uncertainty: that, distinctly classified or not, the infliction of cruel, inhuman or degrading treatment by agents of the state, as closely akin to or adjunct of torture, is universally

8

condemned and renounced as offending internationally recognized norms of civilized conduct."); <u>Wiwa v. Royal Dutch Petroleum Co.</u>, No. 96 Civ. 8386 (KMW), 2002 WL 319887, at *8 (S.D.N.Y. Feb. 28, 2002) (holding cruel, inhuman, or degrading treatment or punishment actionable under ATCA); <u>Jama v. I.N.S.</u>, 22 F. Supp. 2d 353, 363 (D.N.J. 1998) ("American Courts have recognized that the right to be free from cruel, unhuman or degrading treatment is a universally accepted customary human rights norm."); <u>Xuncax v. Gramajo</u>, 886 F. Supp. 162, 186 (D. Mass. 1995) (holding that "[t]he international prohibition against [cruel, inhuman, or degrading treatment or punishment] appears to be no less universal than the proscriptions of official torture"); <u>Paul v. Avril</u>, 812 F. Supp. 207 (S.D. Fla. 1993) (entering default judgment against former Haitian military ruler on behalf of six alien plaintiffs for ATCA claims of cruel, inhuman, or degrading treatment or punishment).

Finally, this Court in <u>Abebe-Jira v. Negewo</u>, 72 F.3d 844 (11th Cir. 1996), affirmed a district court order holding that cruel, inhuman, or degrading treatment or punishment is actionable under the ATCA as a violation of international law.[3] In doing so, the Court affirmed the trial court's judgment, which clearly stated:

---

[3] I note that <u>Abebe-Jira</u>, binding precedent in the Circuit, was neither mentioned nor cited by the panel in its discussion of cruel, inhuman, or degrading treatment or punishment.

The evidence also establishes that each of the plaintiffs was subjected to cruel, inhuman and degrading treatment or punishment. The prohibition against such treatment is found in all of the major international human rights treaties, including the International Covenant on Civil and Political Rights ratified by the United States in September 1992 and the Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment. In October 1990 the Senate gave its advice and consent to this Convention with the reservation that the United States considers itself bound by Article 16 of the Convention regarding cruel, inhuman and degrading treatment or punishment to the extent that this term has the same meaning as the kind of cruel and unusual treatment or punishment prohibited by the Fifth, Eighth or Fourteenth Amendment of the United States Constitution. See S. Exec. Report (Sen.) 101-30 101st Cong., 2d Sess., Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment (1990).

Abebe-Jira v. Negewo, No. 90-CV-2010, 1993 WL 814304, at *4 (N.D. Ga. Aug. 20, 1993). Indeed, this Court in Abebe-Jira essentially anticipated the analysis in Sosa, in the sense that the test it applied comports with the test dictated in Sosa. Abebe-Jira, 72 F.3d at 846-48 (applying an analysis similar to that applied in Filartiga v. Pena-Irala, 630 F.2d 876, 890 (2d Cir. 1980), and explicitly approved by Sosa, 542 U.S. at 731). These sources all indicate that cruel, inhuman, or degrading treatment or punishment satisfies the "norm of international character" requirement of Sosa. See Sosa, 542 U.S. at 725.

I also note that the panel disregarded the specific content requirement set forth in Sosa. See Sosa, 542 U.S. at 732 (holding that once it has been established

10

that the norm at issue is one "of international character accepted by the civilized world," our mandate is to determine whether that norm is of as "definite" a content, and as accepted "among civilized nations [as] the historical paradigms" of the 1790s). The Court in Sosa based the specific content requirement on United States v. Smith, 18 U.S. (5 Wheat.) 153 (1820), which mandates a determination of whether "the crime is defined by the law of nations with reasonable certainty," through the consultation of "the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing the law." Id. at 160-61. Had the panel followed the required Sosa analysis, it would have seen that the specific content requirement of Sosa is not one of categorical specificity – it does not require defining every possible instance of cruel, inhuman, or degrading treatment or punishment, but rather compels a determination of whether the facts alleged in a particular situation sit within the universal prohibition against cruel, inhuman, or degrading treatment or punishment. Sosa, 542 U.S. at 735-36 (avoiding the larger question of whether a plaintiff could ever bring a claim of arbitrary detention under the ATCA, and settling instead on the narrower issue of whether the plaintiff in that case had alleged events that could support a claim under the ATCA). I cannot see how the facts alleged here – for example, repeated threats that plaintiffs would be killed by

11

cruel means – do not meet the prevailing definitions of cruel, inhuman, or

degrading treatment or punishment.[4]

Thus, I believe this case warrants rehearing and is entitled to en banc review.

---

[4] Indeed, these facts would meet even the restrictive definition of cruel, inhuman, or degrading treatment or punishment adopted by the United States Senate, which recognized "cruel, inhuman and degrading treatment or punishment only insofar as the term 'cruel, unusual and inhumane treatment or punishment' means the cruel, inhuman or degrading treatment or punishment prohibited by the Fifth, Eighth, and/or Fourteenth Amendments to the Constitution of the United States." U.S. Reservations, Declarations, and Understandings, Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Cong. Rec. S17486-01 (daily ed., Oct. 27, 1990). Furthermore, it is clear that the acts alleged in this case meet the definitions of cruel, inhuman, and degrading treatment in international treaties, regional and international tribunals, and the writings of prominent jurists, which is the analysis that Sosa requires us to perform. Sosa, 542 U.S. at 732 (citing Smith, 18 U.S. (5 Wheat.) 153); see, e.g., U.N. Body of Principles for the Protection of All Persons Under Any Form of Detention or Imprisonment, Principle 6, G.A. Res. 43/173, 43 U.N. GAOR Supp. (No. 49) at 298, U.N. Doc. A/43/49 (1988) ("[T]he term 'cruel, inhuman or degrading treatment or punishment' should be interpreted so as to extend the widest possible protection against abuses, whether physical or mental, including the holding of a detained or imprisoned person in conditions which deprive him, temporarily or permanently of the use of any of his natural senses, such as sight or hearing, or of his awareness of place and the passing of time."); Affidavit of International Law Scholars on the Status of Torture, Cruel, Inhuman or Degrading Treatment, Crimes Against Humanity and Arbitrary Detention under International Law at 18, Doe I v. Liu Qi, 349 F. Supp. 2d 1258 (N.D. Cal. 2004), available at http://www.cja.org/cases/Liuqi_Docs/Liuqi_ILAff.html (noting that "[t]here is a close relationship between torture and cruel, inhuman or degrading treatment or punishment. The difference between these two violations of international law can be measured by the severity of the act and the degree of suffering").